**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MACEO T. STREATER<br>*Plaintiff,*<br><br>v.<br><br>THE CITY OF NEW HAVEN; CHIEF OF POLICE NICHOLAS PASTORE, IN HIS OFFICIAL CAPACITY; OFFICERS JOSEPH GREENE, ROBERT LAWLOR JR., VINCENT RAUCCI, VAUGHN MAHER, IN THEIR INDIVIDUAL CAPACITIES,<br>*Defendants*. | : | **Civil Action No: 24-4**<br><br>*Jury Demanded*<br><br>January 2, 2024 |

**COMPLAINT**

## A. Introduction

1. New Haven homicide detectives Anthony DiLullo and Joseph Greene intimidated, coerced, and bribed witnesses to give false statements to convict innocent men of serious crimes, including murders, resulting in hundreds of years of wrongful imprisonment. Although the City of New Haven was aware of their outrageous misconduct, paid at least one victim, and became aware of many other cases over the years, neither Greene nor DiLullo were ever disciplined by Internal Affairs or otherwise held accountable.

2. On May 8, 1990, 19-year-old Terrance Gamble was shot and killed in the Newhallville neighborhood of New Haven, Connecticut. Maceo Troy Streater had nothing to do with it. He was employed by Southern New England Telephone Company. He was a father of two young children. He was 23 years old. At the time of the murder, he was at church.

3. But due to Greene and DiLullo's intimidation and coercion of witnesses to give false statements, and the City of New Haven and its policymakers' deliberate indifference toward their misconduct, Mr. Streater was falsely arrested and wrongfully imprisoned for

almost 25 years for the Gamble murder without any physical or forensic evidence tying him to the crime.

4. The City of New Haven was well aware of Greene and DiLullo's misconduct long before Mr. Streater's two trials (the first trial ended in a hung jury), and were made aware on multiple occasions after Mr. Streater's conviction as well, but continued a policy and practice of deliberate indifference toward their outrageous misconduct, which continued during 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, and 2017, and continues to the present, with individuals who are still incarcerated behind their lies. To this day, neither Greene nor DiLullo have any record of official discipline by the New Haven Police Department.

5. As a proximate result of defendants' misconduct, Mr. Streater suffered restrictions on all forms of his personal liberty daily for more than 24 years. During that time, Mr. Streater was caused to suffer severe and continuing personal injury, pain, suffering, physical and emotional distress, and the destruction of his family.

6. Throughout this entire ordeal, Mr. Streater has steadfastly maintained his innocence and his faith that justice will prevail. On April 6, 2022, Mr. Streater's murder charges were absolutely pardoned and expunged by the Connecticut Board of Pardons and Paroles, "forever acquit[ting], releas[ing] and discharg[ing]" him from said convictions.

7. In January 2023, Mr. Streater was elected a member of the City of New Haven's Board of Alders—a testament not only to his strength, character, and resilience, but also the potential destroyed by Greene, DiLullo, and the City of New Haven's violation of his constitutional rights.

8. Mr. Streater now brings this case to seek redress in damages for the grievous harms inflicted by his wrongful conviction and incarceration, to hold the City of New Haven Police Department accountable for the misconduct that ruined his life, and to prevent this miscarriage of justice from occurring to anyone else in the future.

## B. Parties

9. Plaintiff **MACEO STREATER** is a domiciliary of the State of Connecticut, a lifelong resident of Newhallville, New Haven, Connecticut, and an elected member of the City of New Haven Board of Alders, representing the 21st Ward.

10. Defendant **CITY OF NEW HAVEN** is, and at all times relevant to this Complaint was, a municipality located in the State of Connecticut. The City of New Haven was officially responsible for the policies, practices, and customs of the New Haven Police Department (NHPD), and was the employer of the individual New Haven Police Officers in this matter. During all times relevant to this Complaint, the City of New Haven delegated policy-making authority regarding the NHPD to the NHPD Chief of Police, for whose actions the City itself was directly liable.

11. Defendant **NICHOLAS PASTORE**, as relevant to this Complaint, was an employee of NHPD acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New Haven and the NHPD. Pastore served as Chief of Police from approximately February 1990 to early 1997, when he resigned. The Chief of Police is responsible for setting the policies and practices of the NHPD, and is the final policymaker for police actions on behalf of the City of New Haven. Pastore is named in both his individual and official capacities.

12. Defendants **JOSEPH GREENE**, **ROBERT LAWLOR, JR**., **VINCENT RAUCCI**, and **VAUGHN MAHER**, as relevant to this Complaint, were officers of the NHPD acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New Haven and NHPD. He is sued in his individual capacity.

13. Defendants Greene, Lawlor, Raucci, and Maher were personally involved in the investigation of the Gamble murder and in Mr. Streater's arrest, prosecution, and conviction. Each of these individuals had knowledge of the means and methods of the investigation, the lack of probable cause implicating Mr. Streater, the existence of coerced and fabricated witness testimony, the lack of forensic or physical evidence, and despite having an opportunity and a duty to do so, none took any action to prevent the unconstitutional activities described herein.

## C. Jurisdiction

14. Because this action is brought pursuant to 42 U.S.C. § 1983, jurisdiction is invoked pursuant to 28 U.S.C. § 1331 & 1343.

15. Venue is proper in this Court by virtue of 28 U.S.C. § 1391 because the events giving rise to the claims occurred in the District of Connecticut.

16. This Court has supplemental jurisdiction over Mr. Streater's state civil rights and other state law claims by 28 U.S.C. § 1367(a).

## D. Factual Allegations

17. On May 8, 1990, Terrence Gamble was murdered near Shelton and Argyle in New Haven, Connecticut.

18. On May 10, two days later, Defendant Joseph Greene and now-deceased detective Anthony DiLullo conspired to coerce a false witness statement from Carolyn Cheek implicating Mr. Streater in the murder.

19. Defendant Greene stopped and started the tape while recording Ms. Cheek's statement, stopping the recording to tell Ms. Cheek what to say.

20. Defendant Greene and Mr. DiLullo stalked Ms. Cheek after the murder, coming to her house several times.

21. At the time, Ms. Cheek was going to court because her child had been taken out of her custody by D.C.Y.S. Greene and DiLullo would come to her court dates and threaten to influence court proceedings against her if she refused to testify.

22. At both of Mr. Streater's criminal trials, Ms. Cheek testified that she was pressured by New Haven police detectives to give a statement implicating Mr. Streater in the murder.

23. Ms. Cheek testified that detectives pressured her at court dates for her child and at her school, which caused her to drop out of school because of the harassment.

24. No physical or forensic evidence tied Mr. Streater to the crime. Although shell casings were recovered from the scene of the murder, and they had fingerprints that were recovered from the casings, the fingerprints did not match Mr. Streater. No ballistics or DNA evidence inculpated Mr. Streater.

25. The entire case against Mr. Streater was based on witnesses who gave false testimony. But there was only one witness who ever testified, albeit falsely, that he was an eyewitness to the crime. The state's only so-called eyewitness to the murder was Joseph

Preston, who later admitted that he gave his statements to police under duress and coercion by Greene and DiLullo.

26. Preston had criminal charges pending at the time that Greene and DiLullo used as leverage to obtain a false statement implicating Mr. Streater in the murder. Believing that he would be set up for a robbery he did not commit, and put into a you-or-me situation, Preston falsely implicated Mr. Streater and said that he saw Mr. Streater commit the crime. Mr. Preston would later testify that his statements were false during Mr. Streater's postconviction proceedings and continues to maintain they are false today.

27. Donald Andrews, at the time an 11- or 12-year-old child, testified that he saw a car that the state contended Mr. Streater was in on the night of the murder. Mr. Andrews was coerced to testify falsely to implicate Mr. Streater by Greene and DiLullo. Mr. Andrews testified that Mr. Streater and Mr. Gamble had gotten into a fight because Mr. Gamble's dog had bitten Mr. Streater's dog, but Mr. Streater never owned a dog.

28. Greene and DiLullo threatened Mr. Andrews that if he refused to testify falsely implicating Mr. Streater, they would arrest his mother, who was addicted to illegal substances. Greene and DiLullo threatened that they would come to Mr. Andrews's house, find drugs, and take his mother away. Believing that implicating Mr. Streater was the only way to help his mother, Andrews gave a false statement implicating Mr. Streater.

29. Mr. Andrews now feels terrible about what happened to Mr. Streater as he knows that Mr. Streater had nothing to do with the crime. The coercion from Greene and DiLullo caused him lifelong trauma that haunts him to this day.

30. Greene and DiLullo also coerced another witness, Rashid Shakir, to give a false statement implicating Mr. Streater in an argument with Gamble prior to the shooting. At Mr.

Streater's trial, Shakir admitted that he had lied in the statement and never saw the supposed argument. Shakir denied even saying that he saw such an argument. Greene and DiLullo had fabricated the story in their conspiracy to falsely convict Mr. Streater.

31. The City of New Haven, by and through its policymakers at the New Haven Police Department, had in force and effect during the Gamble investigation and for years before and after, a policy, practice, and custom of unconstitutional misconduct relating to witness statements.

32. In particular, New Haven Police officers and detectives, including most notoriously Joseph Greene and Anthony DiLullo, among others, used unconstitutional coercive techniques to fabricate and coerce false inculpatory witness and suspect statements and suppress exculpatory witness statements.

33. The City of New Haven and its policymakers also had in force and effect during the Gamble investigation and for years before and after a policy, practice, and custom of failing to adequately supervise and discipline NHPD officers and detectives in the exercise of their constitutional obligations, including their obligations not to fabricate evidence, commit perjury, and fail to disclose exculpatory evidence.

34. The City of New Haven has had a policy and practice of burying its head in the sand, refusing ever to discipline Mr. Greene or Mr. DiLullo, and refusing ever to acknowledge their wrongdoing.

35. NHPD, Chief Pastore, and the City of New Haven failed to supervise and discipline Defendant Greene and Mr. DiLullo, and instead promoted and empowered them, violating the constitutional rights of Mr. Streater.

36. Defendant Greene was just one of many NHPD officers and detectives, including the now-deceased Mr. DiLullo, who engaged in unconstitutional witness coercion, witness tampering, perjury, suppression of exculpatory evidence, and fabrication of evidence during the years before and after the Gamble investigation.

37. As early as July 1984, Mr. DiLullo was named as a defendant in a lawsuit alleging malicious prosecution. At trial, he admitted to misquoting statements people gave him for an arrest warrant application and to leaving out facts, including that one witness identified someone completely different as the killer in that case.

38. As Mr. DiLullo himself testified in the late 1980s, "it was his general practice to omit exculpatory information from affidavits submitted in support of applications for warrants." *Golino v. New Haven*, 950 F.2d 864, 867 (2d Cir. 1991). But Mr. DiLullo was not an outlier. He and Defendant Greene were merely the worst offenders.

39. NHPD officers and detectives routinely failed to disclose pre-tape interviews and even taped interviews when the witnesses' statements did not suit them, and covered up these failures by disclosing transcripts of selected portions of interviews.

40. NHPD's pattern, practice, policy, and custom of concealing exculpatory information from witness interviews, including by engaging in dishonest misconduct prior, during, and after the taking of taped witness statements including the destruction of certain statements and suppression of others was well-documented in the courts of the State of Connecticut before, during, and after the Gamble investigation:

a. In 1984, in *State v. Myers*, 193 Conn. 457, 467–68, 479 A.2d 199 (1984), the Connecticut Supreme Court determined that "a [tape-recorded] statement of the state's principal

witness was deliberately destroyed according to a long-standing policy of the [NHPD], notwithstanding the pendency of serious criminal charges."

b. In *State v. Mullings*, 202 Conn. 1, 6, 519 A.2d 58 (1987), NHPD Detective Donna Amato erased the victim's tape-recorded statement and "misplaced" the transcript.

c. *State v. Williamson*, 212 Conn. 6, 7, 562 A.2d 470 (1989), presented the Connecticut Supreme Court "with no less than [its] sixth occasion since 1981 to consider whether the New Haven police department's destruction or loss of a witness' statements requires the striking of the witness' testimony in an ensuing criminal trial." In this case an NHPD detective "conducted the interview by tape recording each question he asked [the witness], shutting the recorder off while she answered, and then reactivating it to repeat her answers himself." *Id*. at 10. The transcript of the interview survived, but the tape was not preserved: "although [the detective] knew that department policy recently had changed to require the preservation of such tape recordings, he had neglected to tell the [police] stenographer to save the recording." *Id*.

d. In *State v. Johnson*, 214 Conn. 161, 164, 571 A.2d 79, 81 (1990), the state Supreme Court again noted that the NHPD had destroyed tape recordings of multiple witnesses.

e. Similarly, in *State v. Belle*, 215 Conn. 257, 263-64, 576 A.2d 139 (1990), overruled on other grounds, *State v. Person,* 236 Conn. 342, 352-53, 673, A.2d 463 (1996), the Court found that the NHPD had again destroyed taped statements given by witnesses.

f. In *State v. Jones*, 29 Conn. App. 304, 307–08, 615 A.2d 149 (1992), the Appellate Court of Connecticut set aside a conviction after a tape of a police report made by an NHPD officer had been destroyed. The Jones court noted that "the facts of this case necessitate

this court's return, yet again, to the New Haven police department's policy of destruction of taped statements…" *Id*. at 310.

g. There are numerous additional examples of the destruction of taped evidence. *See, e.g.*, *State v. Cerilli*, 222 Conn. 556, 572–74. 610 A.2d 1130 (1992); *In re Jesus C.*, 21 Conn. App. 645, 646–48, 575 A.2d 1031, cert. dismissed, 216 Conn. 819, 581 A.2d 1055 (1990).

41. New Haven police officials, including Chief of Police Pastore, were aware of Defendant Greene and Mr. DiLullo's pattern and practice of official misconduct, but did nothing to stop Mr. Streater's prosecution. In fact, they failed to take any action, resulting in additional cases of outrageous misconduct and wrongful convictions.

42. In August 1991, Eric Ham brought a federal civil rights action against Defendant Greene and Michael Sweeney claiming false arrest and malicious prosecution. Mr. Ham, who had been arrested on February 13, 1991 for a January 20, 1991 murder, alleged that Greene and Sweeney had knowingly made misleading statements and omitted material information from their arrest warrant affidavit to obtain an arrest warrant. Greene and Sweeney had failed to disclose that a key witness had made two prior statements in which he had not identified Mr. Ham as the assailant. A jury returned a verdict in favor of Mr. Ham. *See Ham v. Greene*, 248 Conn. 508, 729 A.2d 740 (1999). Although the judgement exceeded $1 million, the City of New Haven was able to take advantage of the prisoner lien statute then in effect, so the judgment was effectively reduced and its deterrent effect mitigated.

43. In September 1991, two individuals were murdered outside of a New Haven diner. In 1994, Daryl Valentine was convicted of those murders based on Defendant Greene and

Mr. DiLullo, the same two individuals who framed Mr. Streater, fabricating evidence and coercing witnesses against Mr. Valentine.

a. At trial, two witnesses testified that they were coerced and bribed by Greene into making written and tape-recorded statements against Mr. Valentine. One witness testified that she had lied in a tape-recorded statement, that Greene had threatened her with jail time to elicit a statement, and that after she provided the statement, Greene bought her alcohol and cigarettes and gave her money to buy cocaine. *See State v. Valentine*, 255 Conn. 61, 762 A.2d 1278 (2000).

b. Another witness also testified that she told Greene she was not present at the diner during the shooting and that she fabricated her statement under pressure and bribes from Greene.

44. On March 4, 1992, Defendant Greene and New Haven police detective James Ponteau arrested Ryan Myers for the murder of an individual in The Hill neighborhood of New Haven a week earlier. In the state's request to charge at the end of Mr. Myers's trial, the state explained that the statements made in-court by one of the state's witnesses, Andre Rogers, were inconsistent with those made in his interview with Defendant Greene. In tape-recorded interviews with Detective Greene from February 29 and March 1, 1992, Rogers claimed that he had been at the scene of the crime and witnessed Mr. Myers committing the murder. During his in-court testimony, however, Rogers claimed that he wasn't present when the crime occurred, and that he didn't know Mr. Myers.

45. Daryl Atkinson was Mr. Myers's co-defendant. In Defendant Greene's arrest warrant, he wrote that an anonymous source told investigators that Mr. Atkinson was involved in the shooting. Defendant Greene then coerced a statement from Mr. Atkinson placing himself

at the scene of the crime on the night of Mr. Moore's murder. At trial, Mr. Atkinson recanted his statement given to Defendant Greene. Defendant Greene also testified and denied allegations of coercing Mr. Atkinson's statement. No incipient witness placed Mr. Atkinson at the scene. Mr. Atkinson was convicted of felony murder. As Mr. Atkinson had attempted to escape jail after his arrest, he was also convicted of escape. Mr. Atkinson received a 95 year prison sentence, which he served more than 30 years in prison for until he received a commutation of more than 50 years off his sentence in 2022.

46. Mr. Myers's conviction was overturned on appeal, but after seeing Mr. Atkinson's conviction affirmed on appeal, Mr. Myers agreed to an Alford plea on May 28, 1999, to lesser charges, allowing for his release from prison in 2006.

47. On April 27, 1993, Ticey Brown was murdered in New Haven. On June 18, 1993, Daryl McEntyre was charged with the murder in yet another miscarriage of justice orchestrated by Defendant Greene. During Mr. McEntyre's 1995 trial, one of the state's witnesses, Priscilla Harris, said that she lied because Defendant Greene and another New Haven police detective had threatened to call her probation officer and DCF and have her kids taken away if she did not cooperate—essentially the same story that Ms. Cheek had told during Mr. Streater's trial. Additionally, Jeff Covington, a five-time convicted felon, falsely testified as a "jailhouse informant" that Mr. McEntyre had confessed to him that he committed the murder. Mr. Covington had been used by Defendant Greene in Mr. Ham's case, in which the City of New Haven had already faced a $1 million+ judgment. At the time, Covington had been arrested on narcotics charge and faced up to 27 years in prison. Eight days after testifying at Mr. McEntyre's probable cause hearing, all of his charges were dismissed, and he was never

incarcerated for them. Mr. McEntyre was convicted, sentenced to 60 years in prison, and served for over 30 years until he received a commutation in 2022.

48. In February 1994, an infant was murdered in New Haven in the living room of her own home. Adam Carmon, who was not responsible, innocent, not known to the victims, and who had no motive to commit the shooting, was wrongfully arrested by New Haven Police including Mr. DiLullo. Although another man, owed a drug debt to the victim's family, confessed twice to his involvement in the crime and named his accomplices, New Haven police, including Mr. DiLullo, illegally disregarded that evidence, suppressed evidence, fabricated evidence, and coerced witness statements. Mr. Carmon was exonerated and released from prison in 2023, after almost 30 years of wrongful incarceration.

49. Troy Lamar Jaynes remains incarcerated for a March 29, 1990 murder for which he has always maintained his innocence. During Mr. Jaynes's trial, two witnesses, Marcus Thomas and Dwayne Branch, testified – though outside the presence of the jury – that DiLullo and another officer offered them "girls or money" in exchange for their giving false statements incriminating Mr. Jaynes. Thomas also testified that Mr. DiLullo directed a racial slur at him, saying, "Who you think they going to believe, you niggers or me?"

50. In 1999, on the advice of the City's Corporation Counsel, the Mayor of New Haven requested that the NHPD reopen its investigation into a murder for which Scott Lewis had been convicted several years earlier. Notwithstanding the Mayor's request, the NHPD refused to reopen the Lewis investigation. Mr. Lewis would not be exonerated for over 10 years.

51. Beginning in 1999, Marquis Jackson and Vernon Horn were wrongfully arrested and imprisoned as a result of the City of New Haven's continuing policy and practice of creating false and misleading evidence, suppressing exculpatory evidence, and intimidating and

coercing false witness statements. Both men were wrongfully incarcerated over decades before their exoneration more than 19 years later.

52. In 2005, two witnesses against murder defendant J'Veil Outing recanted their taped statements, testifying that New Haven Police detectives coerced their statements during off-the-record sessions. Mr. Outing remains incarcerated.

53. Multiple witnesses were also coerced to provide testimony the police wanted in off-the-record pre-interviews during the 2006 investigation and arrest of Bobby Johnson. Johnson was later convicted of murder. He has since been exonerated, and his journey documented in the landmark book *The Other Side of Prospect* by Nicholas Dawidoff.

54. Greene and DiLullo's reputation for misconduct was well known throughout the New Haven Police Department and City of New Haven. Indeed, their misconduct came out during Mr. Streater's trial during the testimony of Ms. Cheek, as well as in several other cases noted above, among others that upon information and belief will be learned about in discovery. NHPD also discovered that Greene's name was found in a drug dealer's notebook, indicating that he was on the drug dealer's payroll. But to this day, there is no record of discipline or any accountability for the actions Greene and DiLullo undertook to fabricate and coerce witness statements. No investigation was ever opened by the City of New Haven into the convictions for which Joseph Greene and Anthony DiLullo were involved.

55. On April 6, 2022, Mr. Streater was granted a full and unconditional pardon by the Connecticut Board of Pardons and Paroles, expunging and erasing the murder conviction that had been the result of the ongoing police misconduct of the defendants, to which he had been subject for more than 24 years.

56. The unlawful, intentional, deliberately indifferent, reckless, and/or negligent acts and omissions of the defendants caused Mr. Streater to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted, and forced to serve more than 24 years in prison, for a brutal crime he did not commit.

57. As a direct result of defendants' intentional, deliberately indifferent, reckless, or negligent acts and omissions, Mr. Streater has suffered personal injuries, bodily injuries and damages, including loss of his freedom for more than 24 years, loss of his youth, pain and suffering, physical injury, severe mental anguish, emotional distress, indignities and embarrassment, degradation, permanent loss of natural psychological development, and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, travel, enjoyment, and freedom of speech and expression.

58. As a further direct result of defendants' misconduct, Mr. Streater has sustained economic injuries and damages, including loss of income, lost wages, diminution of past earning capacity, diminution of future earning capacity, loss of career opportunities, and lost investment income. Mr. Streater has also paid costs of his incarceration to the State of Connecticut.

59. As a further direct result of defendants' misconduct, Mr. Streater has been deprived of the benefit, consortium, enjoyment, satisfaction, and fulfillment of personal and familial relationships, including relationships with his three children, his siblings, his maternal and paternal grandparents, his mother, his father, the mothers of his children, as well as an

extended family and network of family and friends from whom he was cut off physically for more than two decades.

60. On many occasions, Mr. Streater was robbed of the opportunity to say goodbye and spend time with relatives and friends in their final days, as he experienced the death of many close family members and friends during the lengthy period of his incarceration.

61. As a further result of the foregoing outrageous misconduct, the City of New Haven is the wrongful conviction capital of Connecticut—and quite possibly, on a per capita basis, of the entire United States. While New Haven has less than 4% of Connecticut's population, it has approximately half of Connecticut's exonerations on the National Registry of Exonerations, including Mr. Streater's case, which was added in 2023. But despite these exonerations, the NHPD has never changed any of its official policies or general orders as a result of any exoneration.

62. Plaintiff incorporates by reference the allegations in the pleadings in other § 1983 actions arising from New Haven wrongful convictions: Dkt. #23, *Johnson v. City of New Haven*, No. 3:17-cv-1479; Dkt. #1, *Lewis v. City of New Haven*, 3:16-cv-1382; Dkt. #153, *Horn v. City of New Haven*, 3:18-cv-1503; Dkt. #110, *Jackson v. City of New Haven*, 3:19-cv-388; Dkt. #1, *Morant v. New Haven*, No. 3:22-cv-630; Dkt. # 1, *Carmon v. City of New Haven*, 3:23-cv-944.

## E. Claims for Relief

### First Claim: 42 U.S.C. § 1983 Violation of *Brady*

***Against Defendants Greene, Lawlor, Raucci, and Maher***

1-63. The allegations above are incorporated herein as if fully stated here.

64. Defendants Greene, Lawlor, Raucci, and Maher, acting individually and in concert with each other and Mr. DiLullo, deprived Mr. Streater of his clearly established constitutional right to due process of law.

65. These defendants deprived Mr. Streater of his right to due process by withholding, on a continuing basis, exculpatory and impeachment information from prosecutors and defense, including information regarding Andrews, Preston, Shakir, and Cheek's exculpatory indications and statements, prior to the Defendants and Mr. DiLullo's coaching, coercion, and fabrication of false statements, and also by failing to disclose the police misconduct through which the ultimately inculpatory false statements of the witnesses had been procured and fabricated by the NHPD itself.

66. These defendants performed the above-described acts within the scope of their employment with NHPD and pursuant to the NHPD's policies, practices, and procedures of the time and continuing today.

67. Defendants performed the above-described acts under color of state law, with a sufficient level of culpability to hold them liable in damages for their objectively unreasonable conduct. No reasonable officer would have believed this conduct was lawful. This conduct violated clearly established law. Continuing acts and omissions in failing to make the disclosures required under law caused Mr. Streater continuous harm.

**<u>Second Claim: § 1983 Fabrication of Evidence</u>**

***Against Defendants Greene, Lawlor, Raucci, and Maher***

1-63. The allegations above are incorporated herein as if fully stated here.

64. Defendants Greene, Lawlor, Raucci, and Maher, acting individually and in concert with each other and Mr. DiLullo, deprived Mr. Streater of his clearly established constitutional right to due process of law and a fair trial in connection with the interrogations of

Andrews, Preston, Shakir, and Cheek, and other witnesses, by fabricating inculpatory evidence, and by failing to intervene to prevent and or rectify the fabrication of evidence. Defendants forwarded this fabricated evidence to prosecutors, evidence that they knew, intended, was foreseeably likely to, and in fact did influence a jury's verdict against Mr. Streater notwithstanding his innocence, corrupting the truth-seeking function of the trial.

65. These defendants performed the above-described acts within the scope of their employment with NHPD and pursuant to the NHPD's policies, practices, and procedures of the time and continuing to today.

66. Defendants performed the above-described acts under color of state law, with a sufficient level of culpability to hold them liable in damages for their objectively unreasonable conduct. No reasonable officer would have believed this conduct was lawful. This conduct violated clearly established law. Continuing acts and omissions in failing to make the disclosures required under law caused Mr. Streater continuous harm.

**Third Claim: § 1983 Malicious Prosecution**

***Against Defendants Greene, Lawlor, Raucci, and Maher***

1-63. The allegations above are incorporated herein as if fully stated here.

64. Defendant Greene, in concert with Defendants Lawlor, Raucci, and Maher, and Mr. DiLullo, initiated proceedings against Mr. Streater by generating false evidence against him and providing it to prosecutors, applying for a warrant for his arrest, and/or participating in the creation of and approval of the warrant application.

65. The proceedings terminated in Mr. Streater's favor when he was forever acquitted, released, and pardoned of his convictions against him.

66. There was no probable cause for the criminal proceedings against Mr. Streater.

67. The defendants acted with malice toward Mr. Streater.

68. To the extent that any defendant did not initiate the criminal proceeding himself, they failed to intervene to prevent the prosecution without probable cause, despite having knowledge and a reasonable opportunity to prevent it.

69. As a result, Mr. Streater was deprived of liberty and suffered the damages herein alleged.

**Fourth Claim: 42 U.S.C. § 1983 Failure to Intervene**

***Against Defendants Greene, Lawlor, Raucci, and Maher***

1-63. The allegations above are incorporated herein as if fully stated here.

64. Counts One through Three are incorporated herein as if fully stated here.

65. Each of these defendants failed to intervene to prevent the constitutional violations established herein, despite knowledge and a reasonable opportunity to intervene and prevent them. Each of the defendants' failure to intervene was objectively unreasonable and in violation of clearly established law.

66. As a result, Mr. Streater was deprived of liberty and suffered the damages herein alleged.

**Fifth Claim: 42 U.S.C. § 1983 Municipal Liability**

***Against Defendant City of New Haven and Nicholas Pastore in his Official Capacity***

1-63. The allegations above are incorporated herein as if fully stated here.

64. The NHPD had a consistent and widespread practice of fabricating evidence against suspects in homicide and other serious felony cases—including by coercing false witness statements, confessions, feeding information to witnesses, and falsely "clarifying" unhelpful witness statements, which constituted a municipal custom or usage.

65. The NHPD had a consistent and widespread practice of destroying and/or suppressing exculpatory information in homicide and other serious felony cass, which constituted a municipal custom or usage.

66. The City and its municipal policymakers, including Chief of Police Pastore, were deliberately indifferent to NHPD officers' repeated fabrication of evidence, coercion of false confessions, feeding of details to witnesses, false "clarifying" of witness statements, bribery of witnesses, intimidation of witnesses, suppression of exculpatory information, and omission of exculpatory information from arrest warrant applications, demonstrating its tacit authorization and acquiescence in those actions.

67. In particular, the NHPD, the City, and its policymakers turned a blind eye to the outrageous misconduct of Defendant Greene and Mr. DiLullo, acquiescing in and ratifying their conduct by refusing to train, supervise, investigate, discipline, or put an end to their practices, described above.

68. By failing to adequately discipline and supervise officers such as Defendant Greene, Mr. DiLullo, and others, the City was deliberately indifferent to the constitutional rights of its citizens, including Mr. Streater, who came into contact with its police officers.

69. By failing to adequately discipline and supervise DiLullo, Greene, and others, the City was deliberately indifferent to the constitutional rights of its citizens, including the Plaintiff.

70. By failing to train for appropriate investigations and to disclose exculpatory information to prosecutors, the City was deliberately indifferent to the constitutional rights of its citizens, including Plaintiff, who would be investigated by those officers.

71. By any and/or all of these means, Defendant City of New Haven caused the violations of Mr. Streater's constitutional rights set forth in the First through Fourth Causes of Action above.

72. As a result, the Plaintiff suffered the damages herein alleged.

**Sixth Claim: Malicious Prosecution, under Connecticut Law**

***Against Defendants Greene, Lawlor, Raucci, and Maher***

1-63. The allegations above are incorporated herein as if fully stated here.

64. The allegations of the Third Claim are hereby independently stated as a matter of state of Connecticut common law, under which Mr. Streater has an independent and adequate state cause of action.

65. The principles of Connecticut common law malicious prosecution are distinct from the principles of federal civil rights liability.

66. Mr. Streater is entitled to damages under the Connecticut common law for malicious prosecution.

**Seventh Claim: Negligence, under Connecticut Law**

***Against Defendants Greene, Lawlor, Raucci, and Maher***

1-63. The allegations above are incorporated herein as if fully stated here.

64. Each of the defendants owed the Plaintiff duties in their investigation of a crime in which he was a suspect, including but not limited to duties to exercise reasonable care in their investigation; to reasonably pursue and disclose exculpatory evidence, including as required by statute and the Constitution; to refrain from fabricating evidence; to conduct fair and nonsuggestive identification procedures; and/or to intervene to prevent other law enforcement officers from engaging in misconduct.

65. Mr. Streater was a readily identifiable person likely to suffer imminent harm from a breach of the foregoing duties.

66. The defendants breached these duties as set forth above including but not limited to by failing to disclose exculpatory information, failing to reasonably investigate the potential involvement of alternative suspects, failing to intervene to prevent other officers from fabricating evidence or using fabricated evidence, and by coercing or failing to intervene in the coercion of witnesses.

67. As a result, Mr. Streater suffered the damages alleged.

## **Eighth Claim:**
## **Intentional or Negligent Infliction of Emotional Distress, under Connecticut Law**

***Against Defendants Greene, Lawlor, Raucci, and Maher***

1-63. The allegations above are incorporated herein as if fully stated here.

64. All allegations of the Seventh Claim are incorporated herein as if fully stated here.

65. Each of these defendants knew or should have known that their negligent conduct in investigating Mr. Streater and pursuing his criminal prosecution, as set forth above, carried an unreasonable risk of causing emotional distress and that such distress might result in illness or bodily harm.

66. Plaintiff suffered severe and extreme emotional distress which was reasonable and foreseeable in light of the conduct of the defendnts.

67. As a result, the Plaintiff suffered the damages herein alleged.

**<u>Ninth Claim: Indemnification under Conn. Gen. Stat. § 7-465</u>**

***Against Defendant City of New Haven***

1-64. Plaintiff's First through Fourth, Seventh, and Eighth Claims are incorporated as if fully stated herein.

65. Defendants Greene, Lawlor, Raucci, and Maher, as well as Mr. DiLullo, were NHPD officers acting in the performance of their duties within the scope of their employment by Defendant City of New Haven and under color of law.

66. These defendants, and Mr. DiLullo, infringed Plaintiff's civil rights and caused physical damages to his person and property while performing their duties and acting within the scope of their employment.

67. As a result, the Plaintiff suffered the damages herein alleged.

68. Defendant City of New Haven is liable for Plaintiff's damages under Connecticut General Statutes § 7-465.

69. Within six months after the foregoing causes of action accrued, pursuant to § 7-465, Plaintiff filed with the clerk of the City of New Haven written notice of his intention to commence this action and of the time when and the place where the damages were incurred or sustained.

**<u>Tenth Claim: Direct Action under Conn. Gen. Stat. § 52-557n</u>**

***Against Defendant City of New Haven***

1-64. Plaintiff's Seventh and Eighth Claims are incorporated as if fully stated herein.

65. Defendants Greene, Lawlor, Raucci, and Maher, as well as Mr. DiLullo were NHPD officers acting in the performance of their duties within the scope of their employment by Defendant New Haven under color of law.

66. These defendants and Mr. DiLullo owed Plaintiff duties in their investigation of a crime in which he was the primary suspect, including but not limited to duties to exercise reasonable care in their investigation; to reasonably pursue and disclose exculpatory evidence; to refrain from fabricating evidence; to conduct fair and nonsuggestive identification procedures; and/or to intervene to prevent other law enforcement officers from engaging in misconduct.

67. Plaintiff was a readily identifiable person likely to suffer imminent harm from a breach of any of the foregoing duties.

68. The defendants and Mr. DiLullo breached those duties by their conduct set forth above.

69. As a result, Plaintiff suffered the damages hereinbefore alleged.

70. Defendant City of New Haven is liable for those damages under General Statutes § 52-557n.

**F. Prayer for Relief**

WHEREFORE, the plaintiff respectfully requests the following relief:

A. Compensatory damages equal to or greater than $50,000,000.00;

B. Punitive damages equal to or greater than $50,000,000.00;

C. Trial by jury;

D. Reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs, and pre- and post-judgment interest; and

E. Such other and further relief as the Court may deem proper.

Dated: JAN. 2, 2024 Respectfully Submitted,

PLAINTIFF

By:_____/s/_______________
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Alexander T. Taubes
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com