**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MACEO T. STREATER,

*Plaintiff*,

v.

CITY OF NEW HAVEN, ET AL.,

*Defendants*.

No. 3:24-cv-00004 (SRU)

September 8, 2026

**DEFENDANT CITY OF NEW HAVEN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO BIFURCATE AND STAY DISCOVERY ON PLAINTIFF'S MONELL CLAIM**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 2

I. Bifurcating Plaintiff's Monell claim for discovery and trial would serve judicial economy. ........ 3

II. Bifurcating would avoid prejudice to Defendants without prejudicing Plaintiff. ........ 8

CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. City of Saratoga Springs*,
170 F.3d 311 (2d Cir. 1999) .... 3, 8

*Anthony v. City of Bridgeport*,
2015 WL 3745302 (D. Conn. June 15, 2015) .... 8, 9

*Aquino v. City of New York*,
2017 WL 2223921 (S.D.N.Y. May 19, 2017) .... 1

*Bradford v. City of Chicago*,
2019 WL 5208852 (N.D. Ill. Oct. 16, 2019) .... 9

*Ciraolo v. City of New York*,
216 F.3d 236 (2d Cir. 2000) .... 5

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) .... 10

*Fuery v. City of Chicago*,
2015 WL 715281 (N.D. Ill. Feb. 17, 2015) .... 7, 9

*Gavin v. City of New York*,
2021 WL 3774113 (S.D.N.Y. Aug. 24, 2021) .... 1, 3, 7

*Mineo v. City of New York*,
2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013) .... 7, 8

*Monell v. Department of Social Services*,
436 U.S. 658 (1978) .... *passim*

*Morales v. Irizarry*,
1996 WL 609416 (S.D.N.Y. Oct. 22, 1996) .... 3, 5

*Morant v. City of New Haven*,
No. 22-cv-630 (SVN) .... 6, 10

*Padilla v. City of New York*,
1993 WL 5833 (S.D.N.Y. Jan. 4, 1993) .... 6

*Santiago v. City of New York*,
1992 WL 116605 (S.D.N.Y. May 15, 1992) .... 8

*Segal v. City of New York*,
459 F.3d 207 (2d Cir. 2006) .......... 1, 5

*Singer v. Olympia Brewing Co.*,
878 F.2d 596 (2d Cir. 1989) .......... 5

*Veal v. Kachiroubas*,
2014 WL 321708 (N.D. Ill. Jan. 29, 2014) .......... 8

**Statutes**

42 U.S.C. § 1983 .......... 10

General Statutes § 52-557n .......... 5

**Rules**

Federal Rule of Civil Procedure Rule 30(b)(6) .......... 2, 4

Federal Rule of Civil Procedure Rule 42(b) .......... 2

## INTRODUCTION

"It is well-established that a plaintiff must [first] prove the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*." *Aquino v. City of New York*, 2017 WL 2223921, at *1 (S.D.N.Y. May 19, 2017). Thus, if a plaintiff fails to prove his claims against the individual officers he has sued, there is no need to proceed with discovery or trial on the derivative *Monell* claim. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). "It has long been the position of courts in the Second Circuit that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to address the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Gavin v. City of New York*, 2021 WL 3774113, at *5 (S.D.N.Y. Aug. 24, 2021) (collecting cases).

The City of New Haven—with the consent of the Individual Defendants—asks the Court to follow "the most prudent course" here by staying further discovery on Plaintiff's *Monell* claim (Fifth Count) and separating that derivative claim for trial only if necessary after a trial of Plaintiff's claims against the Individual Defendants. Bifurcating Plaintiff's *Monell* claim would serve judicial economy by streamlining discovery and trial, since most potential outcomes of a trial on Plaintiff's individual claims would render a trial on the *Monell* claim unnecessary. *See infra* at 3–7.

Moreover, it would protect both the City and the Individual Defendants from undue prejudice that would result if they are grouped together as defendants at trial, without causing prejudice to Plaintiff. *See infra* at 7–11.

## BACKGROUND

Plaintiff initiated this suit on January 2, 2024, D.E. 1, and filed the operative amended complaint on March 21, 2024, D.E. 14.[1] The parties exchanged initial disclosures in June 2024. Since that time, the City has responded to Plaintiff's requests for production for documents relating to the Individual Defendants. However, significant *Monell* discovery has yet to be completed in this case, including expert disclosures, expert depositions, 30(b)(6) depositions, and interviews and depositions of other officers who were active during the relevant time period but had no involvement with the investigation or prosecution of Plaintiff. There is currently no trial scheduled, and discovery is not scheduled to close until March 1, 2027. *See* D.E. 62.

## ARGUMENT

Under Rule 42(b) of the Federal Rules of Civil Procedure, courts have considerable discretion to order the separate trial of distinct issues or claims "[f]or convenience, to avoid prejudice, *or* to expedite and economize." Fed. R. Civ. P. 42(b) (emphasis added). The Second Circuit has held that "bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate

[1] Plaintiff has sought leave to file a second amended complaint, over Defendants' objections. *See* D.E. 81.

the second issue, *or* where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (emphasis added).

Bifurcation of trial, and discovery, is particularly appropriate (and common) where a plaintiff pursues claims against individual police officers and against the municipality that employed them, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Indeed, in cases involving both individual and *Monell* claims, "[t]he overwhelming weight of authority holds that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Morales v. Irizarry*, 1996 WL 609416, at *1 (S.D.N.Y. Oct. 22, 1996); *see also, e.g.*, *Gavin*, 2021 WL 3774113, at *5 (observing that "[i]t has long been the position of courts in the Second Circuit" that bifurcation of *Monell* claims is "the most prudent course").

## I. Bifurcating Plaintiff's Monell claim for discovery and trial would serve judicial economy.

*Monell* discovery is extremely time-consuming and costly for all parties. While constitutional claims against individual defendants can be litigated in a fairly direct manner, *Monell* claims require proof not only that the individual officers violated the plaintiff's constitutional rights, but that they did so pursuant to, or as a result of, a policy or practice of violating constitutional rights in that manner. *See generally*

*Monell*, 436 U.S. at 694. Proving such a policy or practice is no small feat. Particularly where a department's formal written policies expressly *prohibit* the sorts of violations alleged, a plaintiff must amass considerable evidence—from police records, witnesses, and likely experts—to show that, in fact, the department fostered a practice or custom of *violating* its own written policies that was so widespread as to have the force of law.

This case illustrates just how burdensome and time-consuming *Monell* discovery can be. Even though there has been no stay of *Monell* discovery to date, there remains a great deal to be done in order to prove (or disprove) that NHPD fostered a pattern and practice of suppressing exculpatory evidence so widespread as to have the force of law in 1993. Plaintiff must gather sufficient testimony from former police officers to show that, despite formal policies requiring that exculpatory evidence be turned over to prosecutors (and, in turn, defendants), the de facto practice was to suppress such evidence. The City, in turn, will need to gather testimony from as many officers as possible to rebut Plaintiff's evidence. Assuming Plaintiff notices a Rule 30(b)(6) deposition, the City will also have to devote significant time and expense to identifying and preparing an appropriate witness, given the passage of time since the events in question. Beyond that, both parties will likely need to obtain and depose experts on police practices, at considerable additional expense.[2]

[2] To be sure, some fact witnesses who are deposed in connection with Plaintiff's claims against the individual officers may also possess information that could be relevant to the *Monell* claim. The City would have no objection to these witnesses being questioned on both sets of claims, rather than having to be deposed twice. Similarly, to the extent the City has already produced written policies and other

Given the derivative nature of *Monell* claims, it is possible that all of this time and expense will ultimately be unnecessary. *See, e.g.*, *Morales*, 1996 WL 609416, at *1. Most obviously, if Plaintiff fails to prove his claims against the Individual Defendants, then there can be no derivative municipal liability under *Monell*, and therefore no need for costly *Monell* discovery. *See generally Segal*, 459 F.3d at 219.

But even assuming that Plaintiff proves his claims against the Individual Defendants, there would be no need for discovery and trial on his *Monell* claim if there is another basis on which he may hold the City liable. For example, Plaintiff alleges that the City must indemnify the Individual Defendants for any compensatory damages awarded under the First, Second, Third, Fourth, Seventh, and Eighth Counts of the operative complaint. *See* D.E. 14, Cnt. IX. And he contends that the City is directly liable for his damages under General Statutes § 52-557n. D.E. 14, Cnt. X. If either of these scenarios is established, the *Monell* claim would be rendered moot, as Plaintiff cannot recover compensatory damages twice, *see, e.g.*, *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) (recognizing "the one satisfaction rule, which provides that a plaintiff is entitled to only one satisfaction for each injury"), and punitive damages cannot be assessed against a municipality, *see, e.g.*, *Ciraolo v. City of New York*, 216 F.3d 236, 238 (2d Cir. 2000).

---

evidence that may bear on the *Monell* claim, it does not seek to claw those documents back or preclude Plaintiff from using them. But even allowing for *Monell* discovery that has already been completed, or which might be obtained in the course of discovery on the individual claims, *completing Monell* discovery will still require significant expenditures of time and money on both sides, which may be avoided entirely if the *Monell* claim is bifurcated going forward.

The only scenarios in which a *Monell* trial (and related discovery) would be necessary are if the officers are found to have committed a constitutional violation, but (a) are also found to be entitled to qualified immunity, or (b) are unable to pay the judgment against them and there is no basis for indemnification or derivative liability for the City. And even then, there would remain the possibility that a settlement would avoid the need for discovery and trial on the *Monell* claim. *See, e.g.*, *Padilla v. City of New York*, 1993 WL 5833, at *1 (S.D.N.Y. Jan 4, 1993) ("If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case."). Thus, the majority of possible outcomes of an initial trial against the Individual Defendants would render the *Monell* claim moot and *Monell* discovery unnecessary.

In addition to potentially eliminating the need for burdensome discovery, bifurcation would also simplify and streamline the trial itself. A trial in which the jury is asked to determine only whether one or more Individual Defendants violated Plaintiff's rights, causing his alleged injuries, would be relatively straightforward. A trial in which the jury is also asked to determine whether any proved violation was itself substantially caused by a widespread policy or practice of constitutional violations would be considerably more complex and would require significantly more time. The recent trial of *Morant v. City of New Haven*, 3:22-cv-630 (SVN), which involved similar underlying and *Monell* allegations, stretched on for 21 days, including 15 days of testimony, with much of that time, including entire witnesses, dedicated exclusively to the *Monell* claim. The parties retained dueling expert

witnesses on police practices and fought over evidence of unrelated incidents of alleged police misconduct that were entirely irrelevant to the claims against the individual officers, but relevant to the derivative question whether there was a pattern or practice of violating constitutional rights at the time in question.[3]

As one court explained in support of a decision to bifurcate the trial of a *Monell* claim even after *Monell* discovery had been completed:

> Plaintiffs and the City have both proffered experts on the City's policies, and the trial of the *Monell* claims will essentially involve a min-trial on questions not necessary to the resolution of the remainder of the claims. *Monell* evidence will draw the jury's attention away from resolving the underlying issues of an incident that occurred over seven years ago. Injecting the *Monell* issues into the trial will make the case more complicated and potentially cause juror confusion.

*Fuery v. City of Chicago*, 2015 WL 715281, *3 (N.D. Ill. Feb. 17, 2015). These considerations weigh even more heavily in favor of bifurcation here, where *Monell* discovery has not been completed.

For all these reasons, "[c]ourts in the Second Circuit are generally in favor of bifurcating *Monell* claims." *Mineo v. City of New York*, 2013 WL 1334322, at *1 (E.D.N.Y. Mar. 29, 2013). Simply put, "the most prudent course is to address the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Gavin,* 2021 WL 3774113, at *5.

[3] To prove his *Monell* claim, the plaintiff introduced evidence of similar allegations raised by three other individuals, sparking "mini trials" to determine whether a civil-rights violation had occurred as to each, whether City policymakers were aware of the violations, what actions were taken with respect to each, whether command staff condoned them, and whether the individual defendants were aware of any such condonation.

## II. Bifurcating would avoid prejudice to Defendants without prejudicing Plaintiff.

Bifurcation would not only avoid imposing burdensome discovery obligations on the parties unless and until necessary; it would avoid causing undue prejudice to Defendants at trial, without prejudicing Plaintiff. As the Second Circuit has observed, "bifurcation may be appropriate where one party will be prejudiced by evidence presented against another party." *Amato*, 170 F.3d at 316.

The potential for prejudice is easy to see with respect to individual officers, because "[t]he type of evidence [a] [p]laintiff would have to present in order to prevail on his *Monell* claims—evidence showing that the City had a practice of condoning or encouraging civil rights violations," *Anthony v. City of Bridgeport*, 2015 WL 3745302, at *2 (D. Conn. June 15, 2015), "could dangerously infect the jury's consideration of the individual claim[s]," *Mineo*, 2013 WL 1334322, at *1; *see also, e.g.*, *Veal v. Kachiroubas*, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("[E]vidence . . . regarding [an entity]-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the [individual defendants] by creating the perception that the [entity] routinely acts improperly, even if the [individuals] acted properly in this case."). This is so even though "[t]he potentially voluminous evidence of the Municipal Defendants' policies or customs will simply not be probative of whether [the individual defendants] inflicted a constitutional injury." *Santiago v. City of New York*, 1992 WL 116605, at *3 (S.D.N.Y. May 15, 1992).

Thus, courts in this Circuit (and beyond) have routinely ordered or approved bifurcation when *Monell* evidence might cause prejudice to individual defendants.

*See, e.g.*, *Amato*, 170 F.3d at 316 (approving bifurcation where introduction of "personnel records of police officers . . . as well as a history of all claims of excessive force brought against the entire Police Department" would prejudice individual defendants); *Anthony*, 2015 WL 3745302, at *2 (bifurcating where evidence of "personnel records of police officers and a history of all claims of excessive force brought against the department" would prejudice individual defendants).

At the same time, grouping a municipality together with individual defendants accused of violating a plaintiff's constitutional rights may also unduly prejudice the municipality. *First*, where (as here) a plaintiff raises multiple theories of municipal liability, there is a risk that the jury will confuse the issues and find the municipality liable for violation of the plaintiff's constitutional rights without finding a widespread custom or practice, as required by *Monell*. *See, e.g.*, *Bradford v. City of Chicago*, 2019 WL 5208852, at *4 (N.D. Ill. Oct. 16, 2019) (agreeing that "a combined trial in which the jury is asked to weigh evidence of both individual employee misconduct and City policy risks that *Monell* would devolve into a *respondeat superior* claim, a risk easily avoidable by bifurcating the *Monell* claim"); *Fuery*, 2015 WL 715281, at *3 ("Injecting the *Monell* issues into the trial will make the case more complicated and potentially cause juror confusion.").

*Second*, in cases involving especially egregious alleged misconduct on the part of one or more individual defendants, there is a risk of evidence admissible against the bad actor(s) tainting the other defendants, including the municipality. That risk is particularly acute where, as here, the plaintiff seeks punitive damages against one

or more individual defendants. Though "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), where the claims against the municipality are not bifurcated, a plaintiff may argue for, and introduce evidence to support, punitive damages against the individual defendants, which may influence the jury's assessment of the claims against all defendants, including the municipality.

The recent *Morant* case illustrates how the City might be prejudiced if the *Monell* claim is not bifurcated.[4] There, the plaintiff sought punitive damages against a particularly unsympathetic defendant, Vincent Raucci (who is also a defendant here, albeit one with little alleged involvement, *see infra* at 11). This allowed the plaintiff to introduce a great deal of evidence concerning Raucci's allegedly poor character, including evidence that he had attempted to intimidate a witness in the case (leading him to invoke his Fifth Amendment right against self-incrimination during the trial).[5] Then, just before the case went to the jury, the plaintiff unilaterally withdrew his claim for punitive damages against Raucci, leaving the jury with no place to channel the anger that evidence had generated except through compensatory

[4] In *Morant*, the District Court (Nagala, J.) denied the City's motion to bifurcate, filed after the close of discovery and just six months before trial, finding that bifurcation would not serve judicial economy and that the City's suggestion that the individual officer defendants would be prejudiced was undermined by the fact that none of them joined its motion. *See Morant v. City of New Haven*, No. 22-cv-630 (SVN), D.E. 263. Here, discovery is ongoing and no trial date has been set. Moreover, each of the Individual Defendants has consented to the City's motion, which raises concerns about prejudice not only to them, but to the City itself.

[5] Raucci has since been referred to the U.S. Attorney's Office for criminal prosecution on charges of witness tampering and perjury. *See Morant*, No. 22-cv-630 (SVN), D.E. 640 (July 20, 2026).

damages. As a result, the jury returned a de facto punitive award of $38 million, all in noneconomic damages.

Plaintiff may intend to follow the same playbook here. The (operative) Amended Complaint names Raucci as a defendant who was "personally involved" in Plaintiff's arrest and prosecution, but alleges no facts to support that conclusory allegation. *See* D.E. 14 ¶ 14.[6] There is reason to believe that Plaintiff named Raucci as a defendant precisely because he hopes it will permit him to introduce inflammatory character evidence at trial—evidence that may be even more prejudicial to the City now that Raucci has been referred for criminal prosecution. *See supra* n.5. There is a serious risk that the City will be tainted by whatever evidence Plaintiff is able to introduce against the Individual Defendants, including Raucci, and that the jury may be manipulated into awarding a de facto punitive amount of "compensatory damages," despite the impropriety of punitive-damages awards against a municipality.

While there is a significant risk of prejudice to both the Individual Defendants and the City if the claims are not separated, bifurcation would cause little or no

[6] The proposed Second Amended Complaint adds an allegation that Raucci was present (with Defendant Maher) for an initial interview with Joseph Preston, but it does not allege that Raucci (or Maher) acted improperly during that interview. *See* D.E. 81 ¶ 22. On the contrary, Plaintiff alleges that Maher accurately memorialized Preston's statement that he "would not be able to identify any of the four subjects" he had seen in the area of the shooting, but that Defendant Greene later coerced Preston to identify Plaintiff and prepared an arrest-warrant application that did not disclose the earlier statement. *See id.* ¶¶ 22–27. Though Raucci and Maher allegedly failed to "correct[] the record," *id.* ¶ 28, they remain bit players even in the newest (nonoperative) iteration of Plaintiff's complaint.

prejudice to Plaintiff. An order bifurcating the *Monell* claim would not dismiss the claim. At most, Plaintiff will be spared the expense of further *Monell* discovery unless and until it becomes necessary after a trial of his individual claims. As described above, most possible outcomes of the trial would render further *Monell* litigation unnecessary. But if Plaintiff prevails against the Individual Defendants and there is no other basis on which to hold the City liable for that judgment, there will be nothing precluding him from pursuing his *Monell* claim then.

## CONCLUSION

Bifurcating the *Monell* claim and staying *Monell* discovery would serve the interests of judicial economy and mitigate potential prejudice to the City and the Individual Defendants, while not causing undue prejudice to Plaintiff. Accordingly, the Court should follow "the most prudent course" and grant the City's motion.

Respectfully submitted,

/s/ *Tadhg Dooley*

Tadhg Dooley (ct29364)
Daniel Passeser (ct32099)
Armando Ghinaglia (ct31859)
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400
tdooley@wiggin.com
dpasseser@wiggin.com
aghinaglia@wiggin.com

*Counsel for Defendant City of New Haven*