**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MACEO T. STREATER,<br>Plaintiff, | : | NO. 3:24-cv-00004 (SRU) |
| v. | : | |
| CITY OF NEW HAVEN, ET AL.,<br>Defendants. | : | SEPTEMBER 29, 2026 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITY OF NEW HAVEN'S MOTION TO BIFURCATE AND STAY MONELL DISCOVERY**

**(ECF NOS. 87, 90, 91)**

## I. PRELIMINARY STATEMENT

Thirty-two months into this case, and with new counsel, the City of New Haven asks the Court to wall off discovery into the City's own conduct. Its theory is that municipal liability is "derivative" of the officers' liability, so the Court should try the detectives first and look at the City later, if ever. Def. City's Mem. of Law (ECF No. 87-1) ("City Mem.") at 1, 3, 5.

The theory is wrong. The City concedes that a *Monell* trial "would be necessary" if the officers are found to have violated Mr. Streater's rights but win qualified immunity, or if they cannot pay and the City does not indemnify them. *Id.* at 6. Both scenarios are already here. Detective Greene has moved for judgment on qualified-immunity grounds. ECF No. 64 ¶ 5. And two months ago, in a New Haven wrongful-conviction case against two of these same defendants, Judge Nagala wrote that "[w]hat is plain here is Raucci's and Maher's clear *inability* to pay the money judgment," noted that indemnity remained undecided, and observed that the City was "liable solely on one Count, the *Monell* claim." *Morant v. City of New Haven*, No. 3:22-cv-630 (SVN), ECF No. 642 (D. Conn. July 24, 2026) (emphasis in original).

The rest of the motion fares no better. The *Monell* evidence and the individual-claims evidence are largely the same evidence—the City concedes the witnesses overlap, City Mem. at

4 n.2—so staging discovery means doing it twice, litigating the line between the halves, and waiting years while the last witnesses from 1990 die. The City's prejudice arguments concern what a jury will hear at trial; they are no reason to stop depositions now. And the City agreed at the outset that "[d]iscovery will not be conducted in phases." ECF No. 26 at 5. In the past year, three judges of this Court have denied bifurcation motions in New Haven wrongful-conviction cases. This Court should deny this one.

## II. BACKGROUND

### A. The Claims

Mr. Streater spent more than twenty-four years in prison for the May 8, 1990 murder of Terrance Gamble—a crime he did not commit. Am. Compl. (ECF No. 14) ¶¶ 2–3, 5. In 2022, the Board of Pardons and Paroles granted him an absolute pardon. *Id.* ¶¶ 6, 57. No physical evidence tied him to the crime. The case rested on witnesses who have since recanted, each describing coercion by Detective Joseph Greene and his partner, Detective Anthony DiLullo, who is now dead. *Id.* ¶¶ 19–32. The State's lone claimed eyewitness, Joseph Preston, told detectives—including Defendants Maher and Raucci—on May 9 and 10, 1990, that he could not identify anyone. Only after Greene took over did Preston "identify" Mr. Streater, and Greene's arrest-warrant application omitted Preston's earlier statements. Proposed Second Am. Compl. (ECF No. 81-1) ("PSAC") ¶¶ 20–28.

The Fifth Claim alleges that the NHPD had a "consistent and widespread practice" of fabricating evidence and a "consistent and widespread practice of destroying and/or suppressing exculpatory information," and that the City's policymakers were deliberately indifferent to both. Am. Compl., Fifth Claim ¶¶ 64–71. The complaint pleads the pattern: a string of Connecticut appellate decisions from 1984 to 1992 condemning the NHPD's destruction of witness

statements; DiLullo's sworn admission that "it was his general practice to omit exculpatory information from affidavits submitted in support of applications for warrants"; and Greene's use of the same methods in the *Ham*, *Valentine*, *Myers/Atkinson*, and *McEntyre* prosecutions. Am. Compl. ¶¶ 40, 42, 44–49; *Golino v. City of New Haven*, 950 F.2d 864, 867 (2d Cir. 1991). In *Ham*, as here, a key witness had not identified the suspect, the warrant affidavit omitted that fact, and a jury returned a verdict against Greene. Am. Compl. ¶ 44.

The complaint also pleads two state-law counts against the City: indemnification under Conn. Gen. Stat. § 7-465 (Ninth Claim), limited to the First through Fourth, Seventh, and Eighth Claims, and a direct action under Conn. Gen. Stat. § 52-557n (Tenth Claim), limited to the negligence-based Seventh and Eighth Claims. Am. Compl., Ninth & Tenth Claims.

## B. Discovery Has Proceeded on Every Claim, by Agreement, Since 2024

The parties' joint Rule 26(f) report, prepared with the City's participation, provides: "Discovery will not be conducted in phases." ECF No. 26 at 1, 5. The Court approved the report and set one deadline for "all discovery, including depositions of all witnesses." ECF No. 29. The City has responded to Plaintiff's document requests, and Plaintiff has served interrogatories and requests for admission. *See* ECF Nos. 30, 37, 52; City Mem. at 2. The Court has extended the schedule six times—the last four on consent motions—without any party proposing phased discovery. ECF Nos. 48, 50, 55, 57, 59, 62. Discovery closes March 1, 2027. City Mem. at 2.

In August 2026, the City's longtime counsel withdrew and new counsel appeared. ECF Nos. 65–67, 70–79, 84–85. On September 8, the City filed this motion. It concedes that "there has been no stay of *Monell* discovery to date," City Mem. at 4, and that fact witnesses "may also possess information that could be relevant to the *Monell* claim," *id.* at 4 n.2. It does not seek to claw back *Monell*-related documents it has produced. *Id.* at 4–5 n.2. Raucci, Maher, and the

Lawlor estate later filed two-page notices that "adopt, in full," the City's arguments. ECF Nos. 90, 91. Greene filed nothing.

Two other motions are pending. Greene has moved for judgment on the pleadings, asserting qualified immunity among other defenses. ECF No. 64 ¶¶ 5–8. And Plaintiff has moved for leave to file the PSAC. ECF No. 81.

## **III. LEGAL STANDARD**

Rule 42(b) permits separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "[T]he moving party bears the burden of establishing that bifurcation is warranted." *Morant*, ECF No. 263 (D. Conn. Feb. 4, 2026) (citing *Byrne v. Yale Univ., Inc.*, No. 3:17-CV-1104 (VLB), 2020 WL 5258998, at *13 (D. Conn. Sept. 3, 2020)). "[T]he existence of *Monell* claims does not automatically warrant bifurcation." *Brathwaite v. City of New York*, No. 24-cv-3222 (NGG) (VMS), 2025 U.S. Dist. LEXIS 65089, at *4 (E.D.N.Y. Apr. 4, 2025). A party seeking to stay or bifurcate *Monell* discovery "bears the burden of demonstrating good cause." *Lopez v. City of New York*, No. 20-cv-2502 (LJL), 2021 U.S. Dist. LEXIS 123469, at *3 (S.D.N.Y. July 1, 2021) (quotation omitted); *see* Fed. R. Civ. P. 26(c)(1). And because the City asks the Court to depart from a Scheduling Order that approved unphased discovery, it must also show good cause under Rule 16(b)(4)—a showing that "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

## IV. ARGUMENT

### A. The City's Premise Is Wrong: *Monell* Liability Does Not Depend on a Judgment Against the Officers.

#### 1. Only a finding that no violation occurred defeats a *Monell* claim.

The motion rests on one proposition: that "the City's liability is derivative of the individual defendants' liability." City Mem. at 1, 3 (quotation omitted). The Second Circuit has rejected it. A plaintiff need not "obtain a judgment against the individual tortfeasors in order to establish the liability of the municipality"; indeed, "the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). The officers' qualified immunity, the untimeliness of the claims against them, a settlement with them, or the abandonment of the claims against them is "irrelevant to the liability of the municipality." *Id.* at 254. Letting a city escape because its officers are immune "would effectively extend the defense of qualified immunity to municipalities, contravening the Supreme Court's holding in *Owen*." *Id.*; *see Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (a municipality "may not assert the good faith of its officers or agents as a defense to liability under § 1983").

Municipal liability "may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999); *accord Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) (noting that "case law . . . suggests *Heller* will not save a defendant municipality from liability where an individual officer is found not liable because of qualified immunity"). The rule the City invokes traces to *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (per curiam), which applies when "the jury has

concluded that the officer inflicted no constitutional harm." *Id.* at 799. There, the jury "was not charged on any affirmative defense . . . ." *Id.* at 798. *Segal*, which the City cites for the same point, City Mem. at 1, 5, says no more: the district court there "properly found no underlying constitutional violation" on summary judgment, so it had no need to reach *Monell*. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). *Segal* says nothing about bifurcation or staying discovery.

So an individual-claims trial disposes of the *Monell* claim in one circumstance only: a finding that no constitutional violation occurred at all. Every other outcome—qualified immunity, a failure of proof about which officer did what, or a verdict against officers who cannot pay—leaves the *Monell* claim standing and necessary. Under the City's plan, it would stand with no discovery behind it.

**2. The injuries here are not "solely attributable" to the named defendants.**

This is not *Heller*, where one officer's conduct was the whole case. A central actor here is not a defendant. Anthony DiLullo—Greene's partner, a lead detective on the Gamble investigation, and the detective whose "general practice" was "to omit exculpatory information from affidavits"—took part in every coerced statement alleged, and he is dead. Am. Compl. ¶¶ 19, 26, 29–32, 40; PSAC ¶ 20; *Golino*, 950 F.2d at 867. No verdict for Greene, Raucci, Maher, or the Lawlor estate can decide what DiLullo did. If DiLullo's torts flowed from the City's customs, the City answers for them under *Monell* whether or not any named officer is liable. *Askins*, 727 F.3d at 253; *Barrett*, 194 F.3d at 350.

The *Monell* theory is also institutional. It alleges that the NHPD itself suppressed exculpatory information as a matter of practice and failed to train detectives to disclose it. Am.

Compl., Fifth Claim ¶¶ 65–66, 70. That is the kind of "systemic" injury that results "not so much from the conduct of any single individual, but from the interactive behavior of several government officials, each of whom may be acting in good faith." *Owen*, 445 U.S. at 652. It is "the combined acts or omissions of several employees acting under a governmental policy or custom . . . ." *Barrett*, 194 F.3d at 350 (quotation omitted). The Second Circuit recognized long ago that a department's lack of any "policy on the proper handling of exculpatory evidence" "might, in the proper case, provide the basis for a deliberate indifference claim," and that a plaintiff "should be allowed to pursue discovery" to prove a practice of condoning misconduct. *Walker v. City of New York*, 974 F.2d 293, 298, 300 (2d Cir. 1992).

The City's own brief proves the point. It says Maher "accurately memorialized" Preston's statement that he "would not be able to identify any of the four subjects," and it calls Maher and Raucci "bit players." City Mem. at 11 n.6. Suppose a jury agrees that Maher wrote the truth down and that neither he nor Raucci is personally liable. The report still never reached the judge who signed the warrant, the prosecutors, or the defense. PSAC ¶¶ 27–28; *id.*, First Claim ¶ 106. A jury could find that the Department's practice—not any one detective—buried it. That is *Monell* liability without individual liability, and it is exactly the claim the City would defer to a second discovery period and a second trial.

*Morant* shows this is not hypothetical. In that New Haven wrongful-conviction case against two of these same detectives, the jury was asked whether the City "had a widespread practice or custom of suppressing evidence that was favorable to criminal defendants," and the City ended up "liable solely on one Count, the *Monell* claim." *Morant*, ECF No. 569 at 4–5; ECF No. 642.

### 3. The City concedes the scenarios that require a *Monell* trial—and both are live.

The City admits that a *Monell* trial "would be necessary" if the officers "are found to have committed a constitutional violation, but (a) are also found to be entitled to qualified immunity, or (b) are unable to pay the judgment against them and there is no basis for indemnification or derivative liability for the City." City Mem. at 6. It treats these as remote. They are this case.

*Qualified immunity.* Greene has already asked the Court to enter judgment on qualified-immunity grounds. ECF No. 64 ¶ 5. If he prevails on that defense at any stage, the *Monell* claim survives. *Askins*, 727 F.3d at 254. Under the City's plan, *Monell* discovery would then begin from scratch—after the individual claims are over.

*Inability to pay.* Raucci and Maher are defendants here. In *Morant*, Judge Nagala found it "plain" that they cannot pay, citing the appointment of CJA counsel for Raucci "based on lack of funds" and Maher's acknowledgment that the judgment "is well beyond the money ever anticipated from [Defendant Maher]." *Morant*, ECF No. 642. Lawlor has died; his estate stands in his place. ECF Nos. 68, 80.

*Indemnification.* Even after the *Morant* verdict, "the Court has not determined the legal question of indemnity yet, and thus it is not certain whether the City would be required to indemnify Raucci and Maher or not." *Morant*, ECF No. 642. The City's liability there rests "solely on one Count, the *Monell* claim." *Id.*

The City's "majority of possible outcomes," City Mem. at 6, is the minority. On this record, the likeliest path to a judgment the City must pay runs through *Monell*.

**4. The state-law counts are not substitutes, and the City has not offered to stand behind its officers.**

The City says the *Monell* claim is redundant because Mr. Streater also seeks indemnification under § 7-465 and direct liability under § 52-557n. City Mem. at 5. The City concedes neither.

Section 7-465 requires indemnification only if the injury “was not the result of any wilful or wanton act of such employee in the discharge of such duty.” Conn. Gen. Stat. § 7-465(a). The core of this case is wilful: coerced witnesses, a manufactured eyewitness, and buried exculpatory statements. The more completely Mr. Streater proves that case, the harder the City will argue that § 7-465 does not apply. *Cf. Veal v. Kachiroubas*, No. 12 C 8342, 2014 U.S. Dist. LEXIS 10599, at *17 n.6 (N.D. Ill. Jan. 29, 2014) (“Lacking a stipulation, the Village conceivably could assert that the officials were not acting within the scope of their employment by the Village.”).

Section 52-557n is narrower still. It bars municipal liability for employee acts that “constitute criminal conduct, fraud, actual malice or wilful misconduct.” Conn. Gen. Stat. § 52-557n(a)(2)(A); *see McCoy v. City of New Haven*, 92 Conn. App. 558, 562 (2005) (a city “could not be liable for intentional torts committed by its employees under § 52-557n (a) (2) (A)”). That is why the Tenth Claim reaches only the negligence counts. The City knows this well: in *Lewis v. City of New Haven*—another NHPD wrongful-conviction case before this Court—the City moved to exclude intentional torts from the plaintiff’s direct-action claim, and the Court granted that part of its motion. No. 3:16-cv-1382 (SRU), 2017 U.S. Dist. LEXIS 3649, at *20 (D. Conn. Jan. 10, 2017). Greene, for his part, is already pressing governmental immunity against the negligence counts. ECF No. 64 ¶ 7. And in *Morant*, the verdict form included a direct-action

claim against the City; the City ended up liable "solely on" the *Monell* count. *Morant*, ECF No. 569 at 5; ECF No. 642.

Tellingly, the City does not offer to stipulate that it will pay any compensatory judgment entered against its officers—the one device courts elsewhere have treated as making *Monell* discovery unnecessary. The City's own authorities show it. In *Bradford*, Chicago filed a "Limited Consent" to judgment against it for compensatory damages if any officer was found liable, including if the officers were "absolved of liability because of qualified immunity," and the court entered it when granting bifurcation. *Bradford v. City of Chicago*, No. 16 CV 1663, ECF No. 182 at 4, 13 (N.D. Ill. Oct. 16, 2019). *Veal* explained that such a stipulation, "for practical purposes, obviates the need for any *Monell* discovery." *Veal*, 2014 U.S. Dist. LEXIS 10599, at *17 n.6. New Haven wants the benefit of a stipulation without making one.

The one-satisfaction rule changes nothing. *Singer*—a securities-fraud settlement case—holds only that "a plaintiff is entitled to only one satisfaction for each injury." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989). The rule limits double recovery. It does not bar a claim, much less discovery. And the Second Circuit has rejected the premise that a judgment against officers makes a *Monell* judgment superfluous: "a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 318 (2d Cir. 1999). A *Monell* judgment "can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue." *Id.* A plaintiff "is entitled to seek symbolic vindication from the municipality as well as the individual official. . . ." *Id.* at 321. That is one reason why Mr. Streater—now an elected member of the

Board of Alders—brought this case: to hold the City's police department accountable "and to prevent this miscarriage of justice from occurring to anyone else in the future." Am. Compl. ¶ 8.

That punitive damages are unavailable against the City, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), says nothing about discovery. And the City's own authority, *Ciraolo*, arose from a joint trial in which "[t]he jury found in favor of the defendants on Ciraolo's claims of unlawful arrest, excessive force, and battery" yet "concluded . . . that the City had acted in wanton disregard of Ciraolo's rights when she was strip-searched." *Ciraolo v. City of New York*, 216 F.3d 236, 238 (2d Cir. 2000).

Finally, the City predicts that a verdict for Mr. Streater would give it "a substantial incentive to settle." City Mem. at 6 (quoting *Padilla v. City of New York*, 1993 WL 5833, at *1 (S.D.N.Y. Jan. 4, 1993)). Speculation that a case may settle is not good cause to stop discovery.

## **B. Staging Discovery Would Multiply the Work, Not Reduce It.**

### **1. The City concedes the overlap, and what remains is individual-claims evidence too.**

The City admits that fact witnesses "may also possess information that could be relevant to the *Monell* claim" and offers to let them be questioned "on both sets of claims, rather than having to be deposed twice." City Mem. at 4 n.2. That concession guts the motion. What the City says remains—"expert disclosures, expert depositions, 30(b)(6) depositions, and interviews and depositions of other officers," *id.* at 2—is individual-claims evidence too.

*The pattern evidence.* The *Monell* pattern here is largely Greene's own conduct in other cases: a witness who could not identify the shooter, an "identification" after police re-interviewed him, and a warrant affidavit that omitted the first statement (*Ham*); witnesses coerced and bribed (*Valentine*); and threats to have a witness's children taken, "essentially the

same story that Ms. Cheek had told" (*McEntyre*). Am. Compl. ¶¶ 44–45, 49; PSAC ¶¶ 76–79. That evidence is admissible against Greene himself to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This Circuit's "inclusionary approach" admits other-act evidence "for any purpose other than to show a defendant's criminal propensity, . . . ." *Anthony v. City of Bridgeport*, No. 3:12-cv-619 (WIG), 2015 U.S. Dist. LEXIS 76834, at *6 (D. Conn. June 15, 2015) (quoting *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986)). Whether misconduct "involved repeated actions or was an isolated incident" is also a measure of reprehensibility for the punitive damages Mr. Streater seeks. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). The City itself anticipates that evidence of an individual defendant's other misconduct will be offered against him at trial. City Mem. at 10–11. It cannot also call that evidence "*Monell* discovery" to be stayed.

*The policy evidence.* What the NHPD required of detectives in 1990—how they recorded interviews, what went into warrant affidavits, what went to prosecutors—is evidence on the individual claims too. Greene has invoked qualified immunity, ECF No. 64 ¶ 5, and "[e]vidence of training and policy is particularly relevant where . . . the defendants intend to argue that they are protected by qualified immunity." *Rutherford v. City of Mount Vernon*, No. 18-cv-10706 (AEK), 2023 U.S. Dist. LEXIS 225224, at *9 (S.D.N.Y. Dec. 15, 2023). The same evidence bears on what Maher and Raucci knew and whether they had a duty and an opportunity to intervene. Am. Compl., Fourth Claim.

*Experts, a Rule 30(b)(6) witness, and "other officers."* A police-practices expert's opinions about how a reasonable detective in 1990 handled exculpatory statements, identifications, and warrant affidavits go to the individual claims as much as to *Monell*. A single

Rule 30(b)(6) deposition is no reason to stop a case, and the City's worry that preparing a witness will be hard "given the passage of time," City Mem. at 4, is a reason to take the deposition now. The officers who worked alongside Greene and DiLullo are fact witnesses to how that unit handled witnesses and warrants—the conduct at issue.

The City also says *Monell* discovery is costly because a plaintiff must prove a custom despite formal written policies. City Mem. at 3–4. That burden is Mr. Streater's, and he wants to carry it now, while witnesses can still testify. The City's professed written policies are a merits argument, not a reason to stop discovery. "The examination of governmental policy and custom necessary to prove up a *Monell* claim is not, under the law, an independent harm against which the Court must protect . . . ." *Lopez*, 2021 U.S. Dist. LEXIS 123469, at *5.

### 2. A "solely *Monell*" line would generate disputes, not savings.

The City asks the Court to stay discovery "directed solely to" the *Monell* claim. ECF No. 87 at 2. Nearly every request here serves both sides of that line. Is Greene's file from *Ham* "solely *Monell*"? The NHPD's 1990 procedures for taping witness interviews? Complaints about DiLullo? Each question becomes a motion. "Implicit within Defendants' request for bifurcation of discovery is an assumption that discovery relevant to *Monell* can be neatly divided and separated from discovery relevant to the claims against the individuals." 2021 U.S. Dist. LEXIS 123469, at *4. Here it cannot be. Judge Nagala saw the same problem at trial: bifurcation would require "ruling on evidentiary objections about whether certain evidence is admissible in the first phase, which may take significant time." *Morant*, ECF No. 263. In discovery, that fight would attach to every request. The City does not explain "how bifurcating discovery here would be more efficient." *Brathwaite*, 2025 U.S. Dist. LEXIS 65089, at *5.

**3. The City's plan guarantees two rounds of discovery and two trials.**

Under the City's plan, the parties would finish individual discovery, brief summary judgment, and try the individual claims. If Mr. Streater won, they would then reopen discovery, re-depose witnesses, exchange *Monell* experts, brief summary judgment again, and try the case again. *See* City Mem. at 12. "If a dispositive motion were to be denied in whole or in part, then discovery on the *Monell* claims would begin anew." *Brathwaite*, 2025 U.S. Dist. LEXIS 65089, at *5. "To delay consideration of *Monell* issues could necessitate recalling certain witnesses." *Wyatt v. City of Lackawanna*, No. 1:17-cv-446 (WKS), 2024 U.S. Dist. LEXIS 20720, at *28 (W.D.N.Y. Feb. 5, 2024). The trials themselves would take longer: "A bifurcated trial will inherently be inefficient, as it would necessitate separate jury addresses, jury instructions, and deliberations (even assuming there would be no duplication of witnesses)." *Morant*, ECF No. 263. A second *Monell* trial before a new jury "would be a colossally inefficient, burdensome, and time-consuming endeavor." *Rutherford*, 2023 U.S. Dist. LEXIS 225224, at *13.

The length of the *Morant* trial, City Mem. at 6–7, proves nothing. Judge Nagala managed it by holding the plaintiff "to his representation that he will present the *Monell* evidence in a 'streamlined' fashion." *Morant*, ECF No. 263. That tool is available here, at trial.

The City's own authorities never contemplated the sequence it proposes. In *Amato*, if the jury found an officer liable, "trial against the City and the Police Department would immediately commence with the same jury." 170 F.3d at 316. In *Anthony*, "the *Monell* portion of the trial will commence immediately." ECF No. 59 at 8. Those plans work only when *Monell* discovery is finished. The City asks for the opposite. And when the district court in *Amato* then dismissed the bifurcated *Monell* claim, it took an appeal to revive it; the Second Circuit warned that "bifurcation is an important tool, yet should not constitute a barrier to suits against

municipalities." *Amato*, 170 F.3d at 321; *see also Bellamy v. City of New York*, 914 F.3d 727, 743, 762 (2d Cir. 2019) (district court "stayed discovery on the core of Bellamy's *Monell* claims" while discovery against the detectives proceeded; Second Circuit later vacated dismissal of *Monell* claim).

**4. Delay destroys evidence in a thirty-six-year-old case.**

The events here date to 1990. The Chief of Police who set NHPD policy, Nicholas Pastore, has died during this case; his estate now stands in his place. PSAC ¶ 12; Am. Compl. ¶ 11. Robert Lawlor died during this case. ECF No. 68. DiLullo is dead. Am. Compl. ¶ 19. So is Carolyn Cheek. PSAC ¶ 37. The *Monell* witnesses—the commanders, supervisors, and internal-affairs officers of 1990—are the oldest witnesses in the case. The City itself invokes "the passage of time since the events in question." City Mem. at 4. Each year of delay costs evidence, and the loss falls on Mr. Streater, who bears the burden of proof. The City would push *Monell* discovery past a trial that has not been scheduled.

The City says Mr. Streater "will be spared the expense of further *Monell* discovery" and that bifurcation "would not dismiss the claim." City Mem. at 12. He does not want to be spared, and delay is the prejudice. "[T]his case has been pending since 2017. Bifurcation would lead only to further delay." *Wyatt*, ECF No. 204 at 8. Mr. Streater has been waiting since 1990.

**5. The City agreed that discovery would not be phased, and it offers no good cause to change course now.**

The joint Rule 26(f) report, prepared with the City's participation, states: "Discovery will not be conducted in phases." ECF No. 26 at 5. The Court approved it. ECF No. 29. The City then consented to four motions extending one unified schedule. ECF Nos. 54, 56, 58, 61. It raised bifurcation only after its original counsel withdrew and new counsel appeared—nearly twenty-

eight months after the Scheduling Order and after Plaintiff's expert-disclosure deadline. The City does not explain the delay. New counsel is not a new circumstance. Good cause under Rule 16(b)(4) "depends on the diligence of the moving party," *Parker*, 204 F.3d at 340, and the City shows none.

### C. The City's Prejudice Arguments Concern Trial, Not Discovery—and Fail on Their Own Terms.

#### 1. Trial prejudice is no reason to stop discovery.

Every prejudice argument the City makes—juror confusion, "mini trials," character evidence, "de facto punitive" damages—concerns what a jury will hear. City Mem. at 7–11 & n.3. None concerns document production or depositions. "[C]oncerns regarding evidence that would be admissible against one defendant which would prejudice other defendants can be addressed when the Court considers how to conduct trial"; such prejudice "does not justify staying or staging municipal discovery." *Lopez*, at *6. The City's own authorities decided trial structure at the end of discovery, not in the middle of it: *Aquino v. City of New York*, No. 1:16-cv-1577 (GHW), ECF No. 88 at 4 (S.D.N.Y. May 19, 2017) (individual claim "ready for trial," with discovery on it "complete"); *Anthony*, ECF No. 59 at 1–2, 8 (decided with motions in limine); *Fuery v. City of Chicago*, No. 07 C 5428, 2015 WL 715281 (N.D. Ill. Feb. 17, 2015) (bifurcating trial, as the City concedes, "even after *Monell* discovery had been completed," City Mem. at 7); *Bradford*, ECF No. 182 at 13 (request to stay *Monell* fact discovery denied as moot); *Mineo v. City of New York*, No. 09-CV-2261 (RRM) (MDG), ECF No. 316 at 1–2 (E.D.N.Y. Mar. 29, 2013) (unopposed trial bifurcation). Even *Gavin* left trial structure open: "This decision is without prejudice to whether any trial in this case should be bifurcated." *Gavin v. City of New York*, No. 20-CV-8163 (JPO), 2021 WL 3774113, at *5 (S.D.N.Y. Aug. 24, 2021). The City has

it backwards when it says these concerns weigh "even more heavily" because *Monell* discovery is incomplete. City Mem. at 7. Courts in the Northern District of Illinois—the source of three of the City's cases—"have disfavored bifurcation motions filed prior to discovery." *Bradford*, ECF No. 182 at 11. If trial structure ever needs deciding, the Court can decide it on a full record.

The City's worry that a jury will turn *Monell* into respondeat superior, City Mem. at 9, is answered the ordinary way: with instructions and a verdict form. In *Morant*, the jury answered separate questions on whether the City had a widespread custom, whether the City, through the same Chief Pastore, made a deliberate choice not to supervise and discipline, whether he ratified the misconduct, and whether the City's actions were the "moving force" behind the violations. *Morant*, ECF No. 569 at 4–5.

**2. The joinders add nothing.**

In *Morant*, Judge Nagala rejected the City's prejudice argument because "the individual Defendants themselves notably have not moved for bifurcation," "[t]he City does not articulate any separate prejudice it may suffer from a non-bifurcated trial," and the court "could mitigate the risk of prejudice to the individual Defendants with carefully-crafted jury instructions." *Morant*, ECF No. 263. Each reason was independent of that court's earlier summary-judgment ruling against one detective. *See id.* The City tries to cure the first with two-page notices from Raucci, Maher, and the Lawlor estate, filed seventeen and twenty days after its motion. ECF Nos. 90, 91. Neither identifies a single item of evidence that would prejudice its authors. Greene—the detective at the center of this case—filed nothing. The third reason stands untouched: "Courts regularly task juries with reviewing different evidence for, and applying different standards to, different parties." *Rutherford*, ECF No. 211 at 8.

The prejudice theory is weakest here anyway. The concern in the City's cases was evidence of "multiple improper police actions" by others, creating "the perception that the police department routinely acts improperly, even if the officers acted properly in this case." *Veal*, ECF No. 86 at 12. Here, much of the pattern is Greene's and DiLullo's own conduct—evidence admissible on the individual claims regardless. *See supra* Part IV.B.1.

**3. The City's "prejudice" is the *Morant* verdict.**

The City's claimed prejudice to itself comes down to one case. City Mem. at 10–11. In *Morant*, Judge Nagala denied the City's bifurcation motion, *id.* at 10 n.4; the claims were tried together; and the jury found the City liable on the *Monell* count. *Morant*, ECF Nos. 263, 569, 642. The City calls the verdict "a de facto punitive award." City Mem. at 11. It has moved for judgment as a matter of law and for a new trial or remittitur. *Morant*, ECF Nos. 618, 619. A verdict the City dislikes is not prejudice; it is what happens when a jury hears the evidence. The risk the City describes—a jury inflating compensatory damages—is policed by instructions, Rule 59, and remittitur, which the City has invoked in *Morant*. It is not policed by stopping discovery here.

The City also complains that the *Morant* plaintiff withdrew his punitive-damages request against Raucci just before deliberations. City Mem. at 10. The City did not object when he did. *Morant*, ECF No. 554 ("Defendant Raucci does not object to this development, and no other Defendant has registered a timely objection.").

**4. Bifurcation would not keep the Raucci evidence from the jury that decides damages.**

The City fears that it "will be tainted by whatever evidence Plaintiff is able to introduce against the Individual Defendants, including Raucci." City Mem. at 11. But Raucci is an

individual defendant. Whatever evidence is admissible against him will come in at the individual-claims trial—the very trial at which, under the City's plan, compensatory damages would be fixed. Bifurcation changes only whether the City sits at counsel table while the jury hears it. It does nothing about the damages number the City says it fears.

The City's accusation that Mr. Streater named Raucci "precisely because he hopes it will permit him to introduce inflammatory character evidence at trial," *id.*, is baseless. Raucci interviewed Preston on May 9, 1990; heard Preston say he "would not be able to identify any of the four subjects"; knew the prosecution rested on an "identification" irreconcilable with that statement; and never corrected the record. PSAC ¶¶ 20, 22, 28; *id.*, Fourth Claim ¶ 106. Raucci answered the complaint in 2024. ECF No. 28. If he believes the claims against him fail, Rules 12(c) and 56 are available. Whether any character evidence comes in is a question for Rules 403 and 404 at trial.

The City also overstates the *Morant* referral. It tells this Court that Raucci "has since been referred to the U.S. Attorney's Office for criminal prosecution on charges of witness tampering and perjury." City Mem. at 10 n.5. Judge Nagala referred him "for investigation and any further action the United States Attorney sees fit to take," and stressed that "a referral is exactly that -- it is not a promise of investigation, much less a promise that any investigation will result in criminal charges." *Morant*, ECF No. 640. Either way, a federal judge's referral of a former City detective for investigation of witness tampering and perjury is no reason to shield the City from discovery.

## D. The City's Authorities Do Not Say What the City Says.

*Aquino.* The City's lead quotation reads: "It is well-established that a plaintiff must [first] prove the denial of a constitutional right by a municipal officer in order to hold a municipality

liable under *Monell*." City Mem. at 1. The word "first" is the City's. The court wrote: "It is well-established that a plaintiff must prove the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*." *Aquino*, ECF No. 88 at 2. The insertion turns an element of liability into a rule of sequence—the proposition the City needs and *Aquino* does not state. And *Aquino* bifurcated only after discovery on the individual claim was "complete" and that claim was "ready for trial." *Id.* at 4.

*Gavin* and *Morales.* The City presents as *Gavin*'s own words the statement that "the most prudent course is to address the *Monell* claims separately and to stay discovery." City Mem. at 1. *Gavin* was block-quoting a 1996 decision, *Morales v. Irizarry*, No. 95-cv-5068, 1996 WL 609416, at *1 (S.D.N.Y. Oct. 22, 1996), and bracketed "[address]" in place of the word *Morales* used—"try." *Compare Gavin*, 2021 WL 3774113, at *5, *with* City Mem. at 3 (quoting *Morales*: "try the *Monell* claims separately"). *Morales*'s "overwhelming weight of authority" line predates *Amato*, *Barrett*, and *Askins*, and its "derivative" premise does not survive *Barrett* and *Askins*. *Gavin* itself was a single protest arrest in which "[t]he core of the parties' dispute is whether Gavin was peacefully searching for a means of egress when she was arrested or whether she jumped on Defendant Dowling's back." 2021 WL 3774113, at *5. It has nothing to say about a thirty-six-year-old wrongful-conviction case built on a department-wide practice.

*Mineo* and *Anthony.* The sentence the City attributes to *Mineo*—"[c]ourts in the Second Circuit are generally in favor of bifurcating *Monell* claims," City Mem. at 7—is not in *Mineo*. It is *Anthony*'s paraphrase of *Mineo*. *Anthony*, ECF No. 59 at 2–3. And in *Mineo*, the plaintiff "d[id] not oppose" bifurcating the trial. *Mineo*, ECF No. 316 at 1. *Anthony*, for its part, was a single-incident excessive-force case in which bifurcation was decided with pretrial motions, and it rested on the rule that where the injury "is caused solely by a named individual defendant who

is found not liable, the municipal government cannot be held liable." *Anthony*, ECF No. 59 at 1–3 (quoting *Santana v. City of Hartford*, 283 F. Supp. 2d 720, 728 (D. Conn. 2003)). This case alleges the opposite.

*Santiago* and *Padilla.* These are rulings from 1992 and 1993. *Santiago* itself recognized that bifurcation may be inappropriate "where the issues, witnesses and documentary evidence central to both claims overlap." *Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 245 (S.D.N.Y. 1993) (quoting *Santiago v. City of New York*, No. 90 Civ. 5233 (RWS), 1992 WL 116605, at *2 (S.D.N.Y. May 15, 1992)). They overlap here.

*The Northern District of Illinois cases. Fuery* bifurcated trial after *Monell* discovery was complete. City Mem. at 7. *Bradford*—a lockup-suicide case, not a wrongful conviction—rested on Chicago's Limited Consent and denied as moot the request to stay *Monell* fact discovery. ECF No. 182 at 2, 4, 13. *Veal* stayed only discovery "related exclusively to *Monell* claims," allowed "discovery that relates to both *Monell* claims and claims against unnamed or individual defendants, including supervisors," to proceed, and assumed the officers "will be indemnified." ECF No. 86 at 11, 14. Where the *Monell* theory is suppression of exculpatory evidence, courts there deny stays: because "a jury may find independent municipal *Monell* liability even if the Individual Defendants prevail as to Plaintiff's claims against them individually," "bifurcation weighs against the interests of judicial economy." *Cruz v. Guevara*, No. 23 C 4268, ECF No. 105 at 22 (N.D. Ill. Dec. 27, 2023) (quotation omitted).

*This District.* In the past year, three judges of this Court have denied bifurcation motions in New Haven wrongful-conviction cases. *Morant*, ECF No. 263 (Nagala, J.); *Jackson v. City of New Haven*, No. 3:19-cv-388 (KAD), ECF No. 330 (D. Conn. Dec. 18, 2025) (denying City's motion to bifurcate without prejudice); *Carmon v. City of New Haven*, No. 3:23-cv-944 (JCH),

ECF No. 298 (D. Conn. Jan. 22, 2026) (denying motion for bifurcation). The City cites only *Morant*, and only in a footnote. And this Court, in a wrongful-conviction case arising from the same department, the same era, and the same Detective Raucci, sustained the *Monell* claims against the City and directed it to "comply with the discovery and motion deadlines" set for the other parties. *Lewis*, ECF No. 54 at 13.

## V. CONCLUSION

The Court should deny the City's Motion to Bifurcate and Stay Discovery on Plaintiff's *Monell* Claim (ECF No. 87) and the joinders in it (ECF Nos. 90, 91). Any question about how to structure the trial can be raised, if at all, on a complete record after discovery closes.

Dated: September 29, 2026

Respectfully Submitted,

PLAINTIFF, MACEO T. STREATER

By: /s/ Alexander T. Taubes
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Alexander T. Taubes Law Offices
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com